**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**EARL TUCKER, ARTHUR "HOTSHOT"
ANKSTON, CURTIS "RERUN" JACKSON,
ARRECE WEBB, Individually and on Behalf
of Others Similarly Situated,**                                      **PLAINTIFFS,**

**VS.**                                      **CIVIL ACTION NO. 2:10CV178-P-S**

**DELBERT HOSEMANN, Secretary of State
for the State of Mississippi, JIM HOOD,
Attorney General of the State of Mississippi,
Combined and in Their Capacity as STATE
ELECTION COMMISSION, Individually
as well as in Their Representative Capacity
and all Others Similarly Situated, et al.,**                                      **DEFENDANTS.**

**<u>ORDER</u>**

These matters come before the court upon the plaintiffs' Motion for Temporary Restraining

Order [2], Motion to Proceed *in forma pauperis* [3], and Emergency Motion to Convert

Proceedings to Final Trial on the Merits [7]. After due consideration of the motions during an oral

hearing held on October 26, 2010, the court finds as follows, to-wit:

The plaintiffs' motion to proceed *in forma pauperis* should be granted as to Plaintiffs Earl

Tucker and Arrece Webb. The motion should be denied as to Plaintiffs Arthur "Hotshot" Ankston

and Curtis "Rerun" Jackson for failure to submit an affidavit as required by 28 U.S.C. § 1915.

The plaintiffs' Emergency Motion to Convert Proceedings to Final Trial on the Merits should

be denied as moot. Essentially, this motion sought to convert their motion for temporary restraining

order to a final trial on the merits. First, Rule 65(a)(2) requires a pending motion for preliminary

injunction, as opposed to one for a temporary restraining order, to convert to a trial on the merits. Since the plaintiffs did not move for preliminary injunction, conversion is premature. Second, the motion should be denied because it was filed only two days before the TRO hearing set for October 26, 2010 and a mere four days after the plaintiffs filed the complaint. To have converted the hearing to a full trial with less than a week's notice to the defendants would have denied the State due process. Third, since plaintiffs' counsel stated near the end of the hearing that after the court ruled on the motion for TRO there would be no more outstanding issues, the motion to convert to a final trial is essentially moot.

The court turns to the motion for a temporary restraining order. The plaintiffs filed their Complaint and motion for a temporary restraining order on October 20, 2010 – some 13 days before the next election which will be held on November 2, 2010. Plaintiff counsel telephoned the court to obtain a hearing which was set for 1:30 p.m. on Tuesday, October 26, 2010. The defendants received verbal notice from the court of the hearing on or about Friday, October 22, 2010. The hearing was held a week before the elections.

Though it was unclear from their pleadings the exact nature of the relief sought by the plaintiffs, the court was able to pinpoint the issue during the TRO hearing. The court confirmed with plaintiff counsel on the record that the sole issue for which the plaintiffs seek specific relief involves the practice of the Secretary of State's office and the Attorney General's office of sending observers to federal and state elections held in Mississippi. The plaintiffs urge that this practice is a change in the election laws in Mississippi which is subject to preclearance by the U.S. Justice Department as required by the Voting Rights Act of 1965. The plaintiffs argue that the practice is "new" and has not been precleared and that the court should therefore enter an injunction to prevent the Secretary

of State and the Attorney General's offices from sending election observers.

After hearing the testimony of the plaintiffs' witnesses and the defendants' sole witness, and after considering the arguments set forth in the plaintiffs' motion for a temporary restraining order and the defendants' response and brief in opposition thereto, the court concludes that the motion should be denied.

For a temporary restraining order, a movant must show (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the injunction will not disserve the public interest. *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974). The Fifth Circuit in *Canal Authority* characterized preliminary injunctions, and by extension temporary restraining orders, as "extraordinary relief." *Id*. at 572. "The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted." *Mississippi Power and Light Co. v. United Gas Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985).

In the present case, the court concludes that the plaintiffs have not demonstrated a substantial likelihood of success on the merits. Ultimately, the plaintiffs did not demonstrate that the practice of the Secretary of State and/or the Attorney General of sending observers to various elections throughout the state is "new" in the sense that it is a change in law that required preclearance by the Justice Department pursuant to the Voting Rights Act. The plaintiffs made much ado of an October 20, 2009 Attorney General's Opinion, 2009 WL 3853252 (Miss. A.G.), essentially characterizing the opinion itself as creating "new" election practice or change in the law. However, the Opinion

was nothing more than an advisory opinion regarding the legality of a preexisting practice. The court concludes that the Opinion itself was not a change in the law, nor did it establish a "new" election practice.

More specifically, the Opinion sought to answer the questions posed by Mr. Willie J. Perkins, Sr. regarding whether the Secretary of State and the Attorney General have the authority to send observers to polling places during municipal elections and, if so, whether such a practice has been precleared by the Justice Department. Without quoting the Opinion at length, the argument set forth therein, as well as that advanced by the State during the October 26, 2010 TRO hearing, follows:

The Secretary of State and the Attorney General are members of the State Board of Election Commissioners pursuant to Miss. Code Ann. § 23-15-211 and therefore are "election officers." Section § 23-15-211 has been precleared.

The Secretary of State and/or the Attorney General, as "election officers," have the right to be present and to therefore observe elections as provided by Miss. Code Ann. § 23-15-245 which provides in pertinent part: "A space thirty (30) feet in every direction from the polls, or the room in which the election is held, shall be kept open and clear of all persons except the *election officers*." (emphasis added). Section 23-15-245 has been precleared.

The Secretary of State is authorized to gather information regarding voting and is required to file an annual report with the Legislature, the Governor, and the Attorney General detailing voter participation in elections throughout the state pursuant to Miss. Code Ann. § 23-15-211.1(2). Section 23-15-211.1(2) has been precleared.

Finally, the A.G. Opinion posits that further authority for the Attorney General to send

observers can be found in Miss. Code Ann. § 7-5-1 which has designated the Attorney General since at least 1930 as the chief legal officer and advisor for the State of Mississippi and states that he "shall have the powers of the Attorney General at common law."

During the TRO hearing, plaintiffs' counsel argued that it was the A.G. Opinion's citation to § 7-5-1 that rendered the practice of sending observers "new" and thus a change in law that requires preclearance. The State countered that the citation was additional authority, it was not needed in and of itself to establish authority to send out observers, and that § 7-5-1 was not an election statute and therefore did not need preclearance.

The court concludes that §7-5-1 is of no import to the question of whether the practice of sending observers runs afoul of the Voting Rights Act since the other statutory authority cited in the subject A.G. Opinion – all of which it is undisputed has been precleared by the Justice Department – adequately and reasonably establishes authority for the Secretary of State and/or the Attorney General to send passive observers to elections in the State of Mississippi.

The State put on the stand Mr. Reese Partridge, an Assistant Attorney General , whose duties from 2003 to the present have included advising state and local officials on election law matters. *See* Affidavit of Reese Partridge. From 1989 to 2003 he worked in the elections division of the Secretary of State's Office as the Senior Attorney. Mr. Partridge testified that since at least 1989, he has personal knowledge that the Secretary of State and Attorney General's offices have sent observers to polling places to various precincts during various elections throughout the State. The plaintiffs presented no evidence, testimonial or otherwise, to contradict this fact.

At the close of proof during the October 26, 2010 hearing, the court requested, and the parties agreed to accept, documentary evidence from the State showing that the Secretary of State

and Attorney General had dispatched observers to polling places in previous elections. On the afternoon of October 27, 2010, the State filed a supplementary response with documentary evidence attached demonstrating that over the past four election cycles, observers have been sent to approximately 68 of the 82 counties in Mississippi. The evidence confirms that the Attorney General and the Secretary of State each sent observers in 2007, 2008, and 2009 to elections in various counties and municipalities.

As to the second element required to warrant a temporary restraining order, the plaintiffs failed to demonstrate that there is a substantial threat that irreparable harm will result in the immediate future if the injunction is not granted. Rather, the testimony from the plaintiffs' witnesses focused on either past voting injustices that, though terrible, occurred as far back as during the Second World War or speculation. One or more of the plaintiffs' witnesses speculated that some elderly African-American voters might be intimidated by the presence of observers in the elections next week because of the perception that the observers might retaliate against them for their vote by taking away their government assistance money. However, the plaintiffs did not produce a witness who personally experienced intimidation of any kind by the presence of observers sent by the Secretary of State or the Attorney General. Nor did the plaintiffs show that anyone had ever known that a given person in a polling place was in fact an observer for the Secretary of State or the Attorney General. Nor did a witness testify that he or she had personal knowledge that an observer was able to ascertain who a given person voted for. In other words, the plaintiffs did not meet their burden of proof in showing actual irreparable harm in the immediate future with specific instances of intimidation by observers in the recent past.

The court concludes that the plaintiffs have also failed to establish the third element required

for a temporary restraining order – *i.e.*, that the threatened injury outweighs the threatened harm to the defendant. Since the plaintiffs have not shown a substantial likelihood of an actual injury during the November 2, 2010 elections, there is no threatened injury to outweigh the threatened harm to the State.

Finally, as to the fourth and final element, the court concludes that the granting of the injunction will disserve the public interest. The subject election is less than a week away and granting the plaintiffs' requested relief in such a short amount of time without a showing of substantial likelihood of success on the merits and substantial likelihood of irreparable harm would unfairly disserve the public's interest in the Secretary of State and Attorney General using their lawful authority to observe elections throughout the State.

The court further notes that the Attorney General's Opinion which gives rise to the controversy is dated October 20, 2009 and that the parties had knowledge thereof on or about that date. The plaintiffs could have chosen to file suit immediately thereafter, fully developing their case with ample time for the court to devote to hearings and deliberation of all of the issues set forth in the Complaint. They elected, however, to refrain from seeking any relief from this Court until 13 days before regularly scheduled federal elections. They thereby prevented a more thorough analysis that they might think this case deserves. Accordingly, the court expressly finds that the plaintiffs are guilty of laches. The doctrine of laches applies when plaintiffs (1) delay in asserting a right or claim; (2) the delay was not excusable; and (3) there was undue prejudice to the party against whom the claim was asserted. *Save Our Wetlands, Inc. v. U.S. Army Corps of Engineers*, 549 F.2d 1021, 1026 (5th Cir. 1977).

The court concludes that the plaintiffs simply did not prove their case for a temporary

restraining order.

**IT IS THEREFORE ORDERED AND ADJUDGED** that:

(1) The plaintiffs' Motion for Temporary Restraining Order [2] is **DENIED**;

(2) The plaintiffs' Motion to Proceed *in forma pauperis* [3] is **GRANTED** as to Plaintiffs Earl Tucker and Arrece Webb but **DENIED** as to Arthur "Hotshot" Ankston and Curtis "Rerun" Jackson;

(3) Since plaintiffs' counsel announced in open court during the October 26, 2010 hearing that no further matters were at issue, and since through this Order the court has resolved the primary issue at hand, these plaintiffs' claims are **DISMISSED WITH PREJUDICE**; therefore

(4) The plaintiffs' Emergency Motion to Convert Proceedings to Final Trial on the Merits [7] is **DENIED** as moot; and

(5) This case is **CLOSED**.

**SO ORDERED** this the 28th day of October, A.D., 2010.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE